# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID HOFF,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN WAYNE WEBB,<br>LIEUTENANT WALKER,<br>CORRECTIONAL OFFICER<br>MARK MADDUX,<br>WARDEN RICHARD GRAHAM, JR., and<br>CORRECTIONAL OFFICER<br>A. CARTWRIGHT,<br><br>Defendants. | Civil Action No. TDC-17-2995 |

## MEMORANDUM OPINION

Plaintiff David Hoff, an inmate at the Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed a Complaint alleging that prison officials at both WCI and Jessup Correctional Institution ("JCI"), where he was previously housed, improperly processed his legal mail and administrative remedy procedure grievances, interfered with his access to courts, and transferred him in retaliation for having filed a grievance, all in violation of his federal constitutional rights. Defendants Warden Wayne Webb and Correctional Officer Mark Maddux of JCI ("the JCI Defendants"), and Defendants Warden Richard Graham, Jr. and Correctional Officer Alicia Cartwright of WCI ("the WCI Defendants"), have collectively filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Having reviewed the Complaint and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

Hoff's Complaint against Lt. Walker of JCI, who has not been served with the Complaint, will be DISMISSED WITHOUT PREJUDICE.

**BACKGROUND**

In his verified Complaint, Hoff alleges that on August 25, 2016, Lt. Walker received in the JCI mailroom a letter for Hoff from "Ethan Ice, Colorado Public Defender," Hoff's public defender in a matter in Colorado state court relating to the Interstate Agreement on Detainers Act ("IAD") ("the Colorado Letter"). Compl. ¶ 10, ECF No. 1. Although the envelope was not a pre-printed envelope from a law office and instead had a handwritten return address, the front and back of the envelope were stamped in red with the warning "Attorney/Client Confidentiality." *Id.*

The following day, August 26, 2016, Correctional Officer Maddux brought the letter, opened, to Hoff's cell along with Hoff's regular mail. Hoff was housed with the general population at JCI and had no restrictions relating to his mail. Hoff advised Maddux that he had received legal mail after it had been opened. Maddux advised Hoff that he did not handle legal mail and that he did not open or inspect any kind of mail. He further advised Hoff that only sergeants may pass out legal mail and only the mailroom may open and inspect the mail.

According to Hoff, shortly before the letter from Ice was opened, Warden Webb contacted Case Manager Ernest Knox and instructed Knox to prevent Hoff "from contacting Colorado any further, meaning the courts and attorney Ice." Compl. ¶ 12. Hoff alleges that this instruction made it appear as if the opening of his "legal mail was in cahoots with instructions not to contact Colorado any further." *Id.* Warden Webb denies ever directly or indirectly instructing Knox to prevent Hoff from contacting Ice or the Colorado courts.

The same day that Hoff received the opened letter, he filed an administrative remedy procedure grievance ("ARP"), ARP No. JCI-1037-16, relating to the incident. On September 13,

2016, Hoff was interviewed as part of the investigation into the ARP. The next day, Hoff was transferred from JCI to WCI. Hoff alleges that there was no reason for the transfer, such that it "appear[ed] to be retaliation for [the] grievance filed by petitioner, especially since petitioner was transferred the next day after being investigated on grievance." Compl. ¶ 13.

After the investigation, Warden Webb dismissed the ARP on December 5, 2016 based on a determination that there was no proof that the letter was opened by the mailroom staff and the mail was not listed in the legal mail book. When Hoff appealed to the Inmate Grievance Office ("IGO"), a videoconference hearing was held before an administrative law judge ("ALJ"). The ALJ denied the appeal on the grounds that because the return address on the letter was handwritten, the letter did not qualify as legal mail under the applicable regulations and therefore did not have to be opened in Hoff's presence.

Meanwhile, after his transfer to WCI, Hoff asked about the status of his ARP and, on or about October 20, 2016, submitted an ARP appeal form with a photocopy of the original ARP to the Division of Correction, Office of the Commissioner ("the Commissioner"). The Commissioner, apparently construing the filing as a new ARP, advised Hoff that the ARP would be redirected to the facility where he was then housed, WCI. On November 14, 2016, Correctional Officer Cartwright, the Institutional ARP Coordinator at WCI, received the ARP and assigned it ARP No. WCI-2554-16. That ARP was processed and dismissed as untimely filed.

As a result of the processing of his second ARP filing, Hoff alleges that Cartwright altered it to "cover up" his claim. Compl. ¶ 14. Cartwright denies altering the ARP in any way and asserts that she processed the ARP "in the normal course in accordance with prison procedure." Cartwright Decl. ¶ 5, Mot. Dismiss Ex. 3, ECF No. 17-5.

According to Hoff, the tampering with his legal mail has continued while he has resided at WCI, as "[m]any legal mail letters petitioner send out never reaches its proper destination." Compl. ¶ 15. In his verified memorandum in opposition to the Motion, Hoff identified specific instances of such tampering. For example, he alleges that he is the plaintiff in another case against the Warden of WCI, and although the Warden filed for summary judgment, Hoff was never served with a copy of the motion. Hoff then "blindly" filed a memorandum in opposition to the motion, and the motion for summary judgment was dismissed. Pl.'s Opp'n Mot. Dismiss ("Opp'n") at 6, ECF No. 19. Hoff also alleges that he has written to unspecified courts but has not received responses to his motions, that on one occasion he received notice of a hearing on or after March 12, 2018, a week after the scheduled hearing date of March 6, 2018, and that unspecified outgoing mail was held for over a week before being sent out. Hoff asserts that Warden Graham is responsible for this alleged tampering at WCI. Graham asserts that he expects staff to comply with directives and policies regarding the handling of inmate mail at WCI.

## DISCUSSION

Construed liberally, Hoff's Complaint alleges that (1) through tampering with his legal mail and his ARP filings, Defendants have violated his right to access the courts, in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution; and (2) by transferring him to WCI, Defendants have engaged in unlawful retaliation for filing grievances, in violation of the First Amendment.

In their Motion, Defendants seek either dismissal of the Complaint or summary judgment in their favor on the grounds that (1) under the doctrine of collateral estoppel, Hoff's claims are foreclosed by the ALJ's finding that the Colorado Letter had a handwritten return address and was therefore not legal mail under the applicable regulations; (2) Hoff has not shown that he was denied

access to the courts or due process of law; (3) the allegations are insufficient to state a claim for retaliation; (4) Hoff's transfer to WCI did not implicate a protected liberty interest; and (5) Defendants are entitled to qualified immunity. Because the Court resolves the Motion on other grounds, it need not address the collateral estoppel argument.

I.  **Legal Standards**

Defendants have filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the

motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Hoff has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter and has instead submitted a verified memorandum in opposition to the Motion ("Opposition"), which is the equivalent of an affidavit by the plaintiff, and has included attached exhibits. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Access to Courts

Hoff claims that he has been denied access to the courts by (1) the opening outside of his presence of the Colorado Letter; (2) an order by Warden Webb that Hoff should be prevented from contacting the Colorado court or his Colorado attorney; (3) alleged tampering with his legal mail to and from WCI; and (4) Cartwright's alleged tampering with his ARP filed after he was transferred to WCI.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"[A] prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" or "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Id.* at

352-53 & n.3. The complaint must contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

In *Christopher*, the Court identified two categories of access-to-courts claims. *Id.* at 413-14. The first, those claims that look "forward" to future litigation, are cases where "official action is presently denying an opportunity to litigate." *Id.* at 413; *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004) (referring to this category as "forward looking claims" that "frustrate[] a plaintiff's ability to bring a suit at the present time"). The second, those claims that look "backward" to specific litigation are those that "ended poorly," "could not have commenced," or "could have produced a remedy subsequently unobtainable." *Christopher*, 536 U.S. at 413-14; *see also Jennings*, 383 F.3d at 1208 (referring to this category as "backward looking claims" that "caused the loss or inadequate settlement of a meritorious case").

As for what constitutes a "frustrated or impeded" claim, a complaint that "was dismissed for failure to satisfy some technical requirement" unknown to the prisoner because of the prison's inadequate legal assistance facilities, or a claim for which the prisoner was unable to file a complaint in court because of such inadequacies, would meet this standard. *Lewis*, 518 U.S. at 351, 353. A claim "tried to an inadequate result" would also qualify as "frustrated or impeded." *See Christopher*, 536 U.S. at 416 n.13. A specific action that clearly disadvantages a prisoner's ability to succeed on the claim may also qualify. *See Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001) (finding that the advantage that the defendants obtained by reading plaintiff's legal papers relating to the litigation could constitute actual injury).

Allegations of injury arising from the denial of access to the courts must be specific and articulate how the litigation was harmed. *See Ali v. District of Columbia*, 278 F.3d 1, 8 (D.C. Cir.

2002) (holding that an allegation that the failure to transport a prisoner's legal documents to his prison caused his unspecified "open case" to be "set back" did not state a claim of actual injury from a denial of access to courts); *see also Johnson v. Hamilton*, 452 F.3d 967, 973-74 (8th Cir. 2006) (dismissing an access-to-courts claim arising from the alleged destruction of the prisoner's legal papers because there were no allegation of facts supporting a finding of injury or prejudice). *Cody*, 256 F.3d at 769-70 (holding that lack of access to computer disks containing the prisoner's legal materials did not establish a denial of access to courts because the vague allegation that the stored data would "set him free" was insufficient to establish actual injury). Generally, allegations of delay in legal proceedings that do not result in "actual substantial prejudice to specific litigation" are insufficient to state a claim for denial of access to courts. *See Johnson v. Barczak*, 338 F.3d 771, 773 (7th Cir. 2003).

## A. The Colorado Letter

Hoff's primary claim is that the JCI Defendants violated his constitutional right of access to the courts by opening the Colorado Letter. Although prisoners generally have a constitutionally protected right to send and receive mail, *see Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Kaufman v. McCaughtrey*, 419 F.3d 678, 685 (7th Cir. 2005), the United States Court of Appeals for the Fourth Circuit has found that "isolated instances" of opening a prisoner's mail outside his presence did not violate the Constitution, even though it violated prison policy, where the acts were accidental or unauthorized. *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983). Several circuits have reached a similar conclusion specifically in the context of legal mail. In *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997), the United States Court of Appeals for the Eighth Circuit held that although as a general matter, legal mail may not be opened except in the presence of the prisoner, "an isolated incident, without any evidence of improper motive or resulting interference

with the inmate's right to counsel or to access the courts, does not give rise to a constitutional violation." *Id.* at 430-31. Other circuits have reached similar conclusions. *See Olive v. Fauver*, 118 F.3d 175, 177-78 (3rd Cir. 1997) (finding that a single incident of opening a prisoner's outgoing mail did not constitute a denial of access to courts absent a showing of actual injury to legal claims); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990) (finding that the inadvertent opening of legal mail on one occasion did not establish a constitutional violation absent improper motive or resulting interference with the right to counsel or access to the courts); *Morgan v. Montanye*, 516 F.2d 1367, 1371-72 (2d Cir. 1975) (finding that a single instance of opened legal mail, without evidence of damage to the prisoner, did not establish a constitutional claim); *see also Barnes v. Wilson*, 110 F. Supp. 3d 624, 632 (D. Md. 2015) ("[P]olicies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail do not state a claim.").

Here, even assuming that the Colorado Letter was opened outside of Hoff's presence, Hoff has identified only a single instance of such unauthorized opening of legal mail at JCI. The record suggests that the opening was inadvertent. Although the return address on the Colorado Letter referred to the Colorado Public Defender, it was handwritten. Pursuant to Code of Maryland Regulations ("COMAR") 12.02.20.01B(4), legal mail is defined as "mail either addressed by an inmate to, or received on *official stationery* from ... an attorney..." (emphasis added). Where the Colorado Letter was sent in a plain envelope with a handwritten return address, not "official stationery" in the form of an envelope with a pre-printed return address listing an attorney's office, the envelope does not appear to comply with Maryland regulations regarding what constitutes legal mail, even with the rubber stamp marking stating "Attorney/Client Confidentiality." The evidence therefore reveals not an improper motive, but a likely mistake in opening the Colorado Letter outside Hoff's presence.

Nevertheless, Hoff asserts, without explaining the motive, that Warden Webb issued an order that Hoff was not to contact the Colorado court or attorney. *See infra* part II.B. To the extent that this allegation could create a genuine issue of fact regarding the motivation for the opening of the Colorado Letter, Hoff has failed to demonstrate any actual injury resulting from that action. There is no allegation that delivery of the Colorado Letter was delayed in any material way, or that any of the contents of the Colorado Letter were lost or were used by JCI officials to undermine his position in the Colorado case. In his Opposition, Hoff claims that the "interference caused [him] issues with his out-of-state case at the time, ultimately resulting in a dismissal with prejudice for speedy trial violations." Opp'n at 5. Dismissal of a criminal case, however, is a favorable disposition to Hoff. Although Hoff claims that his attorney in the Colorado case was removed from representing him and a new panel attorney assigned, and that he had to travel to Colorado to have the case dismissed, he fails to connect those events to the opening of the mail outside of his presence. Under these circumstances, the single incident of opening Hoff's legal mail outside of his presence is insufficient to state a constitutional claim. *See, e.g., Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997) (finding that "[t]he act of opening incoming mail does not injure an inmate's right to access the courts" absent a showing of prejudice).

## B.   Interference with the Colorado Case

In a related claim, Hoff asserts that Warden Webb directed a case manager, Ernest Knox, to order him to refrain from contacting the Colorado courts or the Colorado public defender. Hoff asserts that another inmate heard Knox deliver this directive to Hoff, but he offers no explanation of the motivation for this action. Warden Webb disputes these allegations. However, even if such a directive was given, Hoff does not claim that Knox complied with this instruction to his detriment. At most, he appears to claim that because Knox later falsely told a Colorado court

official that no case manager had submitted paperwork on the IAD matter, he had to be transported to Colorado for a hearing before his case was dismissed, without explaining how such transport could have been avoided to achieve that result. Taken together, his allegations establish that regardless of any actions by Warden Webb, Hoff continued to be represented by counsel in the Colorado case, he had the benefit of a case manager sending information to Colorado, and he was able to get his case there dismissed. The Court therefore concludes that Hoff has not established any "actual injury" from any alleged efforts by Warden Webb to interfere with his access to the courts. *See Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993) (requiring allegations of actual injury to litigation); *Ali*, 278 F.3d at 8.

### C.     Legal Mail at WCI

Hoff's claims regarding the handling of his mail at WCI are also unavailing. After only generally asserting in the Complaint that he has suffered censorship and tampering with mail at WCI, Hoff has stated in his verified Opposition that these irregularities include not receiving a copy of a motion for summary judgment filed in a case in which he filed suit against the Warden of WCI, receiving notice of a hearing date after the date had passed, sending out motions to which courts have not responded, and having outgoing legal mail held for up to two weeks before it was sent out.

These claims fail for three reasons. First, he has not identified any of these legal proceedings, such that the Court cannot determine whether they are challenges to his sentencing or conviction, or to conditions of confinement, as necessary to support an access to courts claim. *Lewis*, 518 U.S. at 355. In short, Hoff has failed to allege the required "nonfrivolous" claim with sufficient specificity to allow for evaluation of whether he has satisfied this requirement. *Id.* at 353; *Christopher*, 536 U.S. at 415.

Second, he has not provided a basis to find actual injury. On the motion for summary judgment, Hoff learned of the motion from the docket entries and filed a memorandum in opposition that resulted in dismissal of the motion. He does not allege that any failure of courts to receive motions he filed, or delay in outgoing legal mail he sent out, has led to an actual injury such as a missed deadline not excused by the court. *See Johnson*, 338 F.3d at 773; *Pearson v. Simms*, 345 F. Supp. 2d 515, 519-20 (D. Md. 2003) (rejecting a claim of denial of access to courts based on the prison holding the inmate's mail for nine days due to the absence of specific allegations of actual injury to legal proceedings), *aff'd*, 88 F. App'x 639 (4th Cir. 2004). Indeed, where prisoner filings are deemed to have been made when the prisoner deposits them in the internal prison mail system, any delay in the mail leaving the prison or reaching the court does not prejudice a prisoner. *Houston v. Lack*, 487 U.S. 266 (1988). Although Hoff alleges that he received notice of a hearing after the scheduled date, Hoff has not specified the nature of the hearing, that the hearing occurred without his presence, or that it resulted in an adverse ruling to him.

Third, Hoff has not asserted facts showing that the only defendant on this claim, Warden Graham, engaged in any of this alleged misconduct. In a § 1983 claim, a defendant cannot be found liable under a theory of vicarious liability or *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Thus, Graham's status as Warden of WCI does not alone subject him to liability. Under § 1983, any liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate

indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted). Here, Hoff has failed to submit facts to establish that the Warden had knowledge of the issues with his mail at WCI. Neither the Complaint nor the Opposition describe any personal involvement by the Warden suggesting participation or knowledge. Warden Graham, for his part, has stated that he expects his staff to comply with the regulations regarding the handling of mail.

As Hoff has not offered sufficient facts upon which a reasonable jury could find a violation of Hoff's right to access the courts arising from alleged mail irregularities at WCI, the Motion will be granted as to these claims.

### D. ARP

Hoff claims that Cartwright violated his constitutional rights by altering the ARP he filed while at WCI. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (2012), requires a prisoner to exhaust administrative remedies before filing suit in federal court. Specifically, it provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The term "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In Maryland prisons, the administrative remedy procedure ("ARP") generally is the process that must be exhausted in order to fulfill this requirement. Because the PLRA's exhaustion requirement plainly extends to Hoff's allegations, and failure to comply with that requirement by completing the ARP process would result in

dismissal of a federal court claim, *see Anderson v. XYZ Correctional Health Serv's., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005), Hoff's claim that prison officials interfered with his ability to complete the ARP process is fairly construed as a claim that he was denied access to the courts. *See Lewis*, 518 U.S. at 355 (stating that a denial of access to courts can be premised on denying the "tools" required to challenge conditions of confinement).

Here, the documentary evidence establishes that on October 14, 2016, Hoff submitted to the Commissioner an ARP appeal form, along with a copy of his original ARP filed at JCI, No. JCI-1037-16, challenging the alleged opening of the Colorado Letter outside of his presence. On November 1, 2016, the Commissioner notified him that it should have been filed at his then-current institution and forwarded it to WCI. On November 14, 2016, Cartwright received a duplicate of the JCI ARP and assigned it Case No. WCI-2554-16 before it was dismissed as untimely. Although Hoff asserts that a darkened copy of the duplicate of the JCI ARP reveals that Cartwright signed the top of the form, he acknowledges that the date with that signature is "11-14-16," the same date that Cartwright acknowledges receiving the document from the Commissioner. Opp'n Ex. 1, ECF No. 19-1. Thus, there is no evidence that Cartwright improperly altered the ARP sent to the Commissioner.

To the extent that Hoff maintains that Cartwright somehow altered the date of ARP No. WCI-2554-16, that ARP was a duplicate of ARP No. JCI-1037-16, which was pursued through the appeal process up to the IGO. Hoff received a hearing at the IGO on whether the Colorado Letter was improperly opened. He thus received a full and fair opportunity to litigate his ARP, fulfilled the exhaustion requirement, and has had the opportunity to present his claim to this Court. As such, Hoff has again failed to demonstrate that he has suffered any actual injury from

15

Cartwright's alleged actions. *See O'Dell*, 112 F. 3d at 776. In the absence of any actual injury, Defendants are entitled to summary judgment on this claim.

### E. Access to Legal Materials

In his Opposition, Hoff alleges that he is suffering "further harassment and interference with access to the courts" in that he "is not allowed to check out any books material, or cases without first getting the librarian to input an override code" which he deems a form of censorship. Opp'n at 4. Because a memorandum in opposition to a motion is not a proper vehicle for amending a complaint or adding new claims, these additional claims will not be considered. *See Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113-14 (5th Cir. 2005) (holding that a claim raised not in the complaint but in response to a motion for summary judgment is not properly before the court); *Gilmour v. Gates, McDonald and Company*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017).

## III. Retaliation

Hoff further asserts that his transfer from JCI to WCI was in retaliation for having filed the ARP relating to the Colorado Letter. In particular, he asserts that he was interviewed about the ARP on September 13, 2016 and was transferred out of JCI the next day, on September 14, 2016, without any legitimate rationale. He was sent first to Maryland Correctional Institution-Jessup ("MCIJ"), where he could not be held because MCIJ does not have wheelchair accessible cells, then to WCI. He contends that transfer to WCI is a form of retaliation because WCI is a maximum-security prison, it is more than two hours away from his "home plan" while JCI is only 10 minutes away, he was stabbed during a prior stint at WCI, and an individual who shot him in 2001 is housed at WCI. Opp'n at 7. He does not state specifically who he believes was responsible for his transfer.

Hoff's retaliation claim is most fairly construed as a claim that he suffered retaliation for exercising his First Amendment right to petition for the redress of grievances. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017).

Here, Hoff filed a grievance against Maddux and thus engaged in protected activity under the First Amendment. As for the requirement that Defendants took an action adversely affecting First Amendment rights, Defendants argue that transfer to WCI cannot meet this requirement because Hoff does not have a liberty interest in being housed in any particular institution or unit within an institution. Indeed, prisoners have no liberty interest in being housed in any particular

facility or in a particular status. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983). However, a plaintiff can establish this element of retaliatory conduct if the defendant took an action that would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500). Even if he lacks a general right not to be housed at WCI, Hoff's assertion that WCI was less desirable based on its maximum security classification, the potential safety risk to Hoff based on a prior incident and the presence of an inmate who had shot him, and the geographic location is sufficient to satisfy this requirement. *Cf. Martin*, 858 F.3d at 250 (finding that placing an inmate in administrative segregation can constitute an adverse action for purposes of a retaliation claim).

Hoff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *Id.* Here, Hoff alleges that he was moved the day after he was interviewed about his ARP. The fact that prison officials necessarily were aware of Hoff's ARP and the temporal proximity of that First Amendment activity and the alleged retaliation is sufficient to support an inference of retaliation at this stage of the proceedings. *See Constantine,* 411 F. 3d at 501 (holding that a four-month span between protected activity and retaliatory activity was sufficiently proximate to support a First Amendment retaliation claim). Notably, Defendants have offered no explanation for Hoff's transfer. Because the Complaint states a plausible retaliation claim and there remain genuine disputes of material fact, dismissal or summary judgment is not warranted at this time.

Finally, the Court considers Defendants' claim of qualified immunity as to the retaliation claim. A public official is entitled to qualified immunity unless (1) viewing the allegations in the

18

light most favorable to the plaintiff, the facts alleged show that the officer's conduct violated a federal statutory or constitutional right; and (2) the unlawfulness of the conduct was "clearly established" at the time of the incident in question. *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is "clearly established" if, at the time of the officer's conduct, the law was "sufficiently clear" that every "reasonable official would understand that what he is doing" is unlawful. *Wesby*, 138 S. Ct. at 589 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). This standard is met if the existence of the right is "settled law" based on "controlling authority" or "a robust consensus of cases of persuasive authority." *Id.*

As discussed above, Hoff's allegations are sufficient to state a claim of retaliation in violation of the First Amendment. Under *Booker*, it is clearly established that retaliation against an inmate for filing a grievance violates the First Amendment. *Booker*, 855 F.3d at 545. Though *Booker* was decided after the conduct in this case, the Fourth Circuit in *Booker* catalogued numerous cases from other circuits and concluded that there was "an overwhelming consensus of authority recognizing that specific conduct is violative of a constitutional right" such that the right was clearly established and qualified immunity did not apply. *Id.* at 545-46. As cited in *Booker*, the United States Courts of Appeals for the Third, Fifth, and Tenth Circuits had held prior to the present conduct in 2016 that retaliation against a prisoner for filing a grievance violates the First Amendment. *See Bibbs v. Early*, 541 F.3d 267, 271 (5th Cir. 2008); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). In addition, the United States Courts of Appeals for the Sixth and Eighth Circuits had reached the same conclusion before 2016. *See Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). Thus, based on the reasoning of *Booker*, this right was clearly established at the time of the alleged violation. Qualified immunity therefore does not apply.

Accordingly, the Motion is denied as to the retaliation claim. However, because the transfer decision was necessarily made at JCI, the WCI Defendants, Warden Graham and Cartwright, will be dismissed from the case.

## IV. Lt. Walker

Where Lt. Walker has not been timely served with the Complaint, the claims against him are subject to dismissal. Had he been served, he would be entitled to dismissal of the Complaint as the sole allegation made against him is that while working in the JCI mailroom he received the letter from Hoff's Colorado Public Defender. Hoff does not specifically allege that Walker improperly opened the letter or personally interfered with Hoff's constitutional rights. Even if Hoff alleged that Walker opened the letter, as discussed above, the single instance of mishandling of Hoff's incoming legal mail is insufficient to state a constitutional claim. Accordingly, the Court will dismiss the claims against Walker.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, is GRANTED IN PART and DENIED IN PART. The Complaint against Lt. Walker is DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date: February 4, 2019

THEODORE D. CHUANG
United States District Judge