# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID HOFF,<br><br>    Plaintiff,<br><br>v.<br><br>WARDEN WAYNE WEBB and<br>CORRECTIONAL OFFICER<br>MARK MADDUX,<br><br>    Defendants. | Civil Action No. TDC-17-2995 |

## MEMORANDUM OPINION

Plaintiff David Hoff, an inmate at the Patuxent Institution in Jessup, Maryland, has filed a Complaint under 42 U.S.C. § 1983 alleging that prison officials at both Jessup Correctional Institution ("JCI") in Jessup, Maryland and Western Correctional Institution ("WCI") in Cumberland, Maryland, where he was previously housed, improperly processed his legal mail and administrative remedy procedure grievances, interfered with his access to courts, and transferred him in retaliation for having filed a grievance, all in violation of his federal constitutional rights. The defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("the First Motion"). This Court granted the motion as to all defendants and claims with the exception of the retaliation claims, asserted under the First Amendment to the United States Constitution, against JCI Warden Wayne Webb and JCI Correctional Officer ("C.O.") Mark Maddux ("Defendants").

Defendants have now filed a second Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("the Second Motion"), which Hoff opposes. Having reviewed the Complaint

and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Warden Webb's Motion will be GRANTED.

## BACKGROUND

The general factual background of this case is set forth in the Court's Memorandum Opinion on the First Motion, which is incorporated by reference. *See Hoff v. Webb*, No. TDC-17-2995, 2019 WL 441162 at *1-2 (D. Md. Feb. 4, 2019). The Court summarizes the specific facts and procedural history relevant to the Second Motion.

On August 26, 2016, while Hoff was incarcerated at JCI, C.O. Maddux brought him a letter from Hoff's attorney, already opened, along with Hoff's regular mail. That day, Hoff filed an administrative remedy procedure grievance ("ARP"), ARP No. JCI-1037-16, relating to the incident. On September 13, 2016, Hoff was interviewed as part of the investigation into the ARP. After the investigation, Warden Webb dismissed the ARP on December 5, 2016 based on the determinations that there was no proof that the letter was opened by the mailroom staff and that the letter was not listed in the legal mail book.

### I. Transfer from JCI

On September 13, 2016 at 7:45 a.m., the Maryland Department of Public Safety and Correctional Services ("DPSCS") transfer coordinator sent an email to all Maryland correctional institutions, including to the JCI transfer coordinator, containing a list of all proposed inmate transfers throughout the Division of Correction ("DOC") scheduled for the following day, September 14, 2016, each of which needed to be certified before the transfer list would be finalized. Hoff was listed as scheduled for transfer from JCI to Maryland Correctional Institution-Jessup ("MCIJ") on September 14, 2016. In order to be on this list, Hoff's name would have been submitted to DPSCS headquarters by the JCI transfer coordinator on September 12, 2016. The

next day, September 14, Hoff was transferred from JCI to MCIJ. Although Hoff is confined to a wheelchair, MCIJ lacks wheelchair-accessible cells. Hoff alleges that there was no reason for the transfer, such that it "appear[ed] to be retaliation for [the] grievance filed by petitioner, especially since petitioner was transferred the next day after being investigated on grievance." Compl. ¶ 13, ECF No. 1. On October 12, 2016, Hoff was transferred from MCIJ to WCI.

According to C.O. Maddux, he was not involved in the decision to transfer Hoff out of JCI. Indeed, C.O. Maddux's duties did not include making any decisions regarding inmate transfers. C.O. Maddux has also asserted that he was not aware that Hoff had filed an ARP on August 26, 2016 or that Hoff was scheduled to be interviewed by an ARP investigator on September 13, 2016.

Likewise, although Warden Webb was on the email distribution list that received the transfer list on September 13, 2016, he has stated that he had no input in the decision to transfer Hoff out of JCI, and that he was not even aware as of the date of the transfer that Hoff had filed his August 26, 2016 ARP or that Hoff was interviewed by the ARP investigator on September 13, 2016. Both Warden Webb and C.O. Maddux assert that they had no actual involvement in Hoff's subsequent transfer from MCIJ to WCI.

**II.    MCIJ and WCI**

According to Hoff, once he was transferred to MCIJ, he alerted MCIJ staff that a person who shot him in 2001 was incarcerated at WCI, and that when Hoff was previously housed at WCI, he was stabbed. MCIJ, however, has no records reflecting that Hoff raised such concerns. MCIJ staff did make a notation, on September 20, 2016, that Hoff uses a wheelchair and recommended that he be transferred to a wheelchair-accessible facility where he could have physical therapy.

On October 12, 2016, Hoff was transferred to WCI. WCI houses minimum, medium, and maximum-security level inmates and is designated as an institution compliant with the Americans with Disabilities Act ("ADA"). JCI also houses medium and maximum security inmates, and according to Hoff, it has handicapped-accessible cells, but it is not a designated handicapped-equipped facility. According to Michael Yates, a DPSCS Correctional Case Management Supervisor, Hoff, as a medium-security inmate, is not subjected to harsher conditions of confinement or a heightened risk to his safety at WCI.

Hoff also states that he alerted staff at WCI about his safety concerns. In an ARP filed on October 20, 2016, Hoff reported that he had been stabbed at WCI in 2012 by an unnamed assailant, who he alleged was still incarcerated there. None of his 18 other ARPs filed during his time at WCI asserted that he had been assaulted or threatened at WCI or was in physical danger there, and none provided the names of known enemies or any specific facts relating to safety concerns. Hoff does not have any inmates listed on his Enemy List.

On August 18, 2017, 10 months later, Hoff was placed in administrative segregation pending an investigation because he had reported that he was in fear for his safety. As part of the investigation to assess whether he qualified for protective custody, Hoff was interviewed by a Case Management Supervisor, who described Hoff as "deceptive" and "non-cooperative" and noted that he refused to answer questions or provide a written statement. Mot. Summ. J. Ex. 5 at 8-9, ECF No. 24-6. Hoff did not provide any names, cell locations or affiliations which would have allowed staff to investigate his claims that he feared for his safety at WCI. Where Hoff stated that he is from Jessup and should be housed there, the Case Management Supervisor concluded that Hoff was attempting to manipulate a transfer back to JCI. Accordingly, Hoff was removed from administrative segregation and returned to general population housing.

## DISCUSSION

Based on the Court's ruling on the First Motion, the only remaining claim is Hoff's claim of First Amendment retaliation based on his transfer from JCI to MCIJ and then to WCI. *See Hoff*, 2019 WL 441162 at *9. In the Second Motion, Defendants seek dismissal or summary judgment on the grounds that they were unaware of Hoff's August 23, 2016 ARP or that Hoff was scheduled to be interviewed about his ARP, and they had no involvement in initiating Hoff's transfer. Defendants also argue that WCI did not present harsher conditions of confinement or a greater safety risk to Hoff than WCI. In his memorandum in opposition to the Second Motion ("Opposition"), Hoff notes that Defendants still have not provided an explanation for his transfer out of JCI to MCIJ, a facility not equipped to house handicapped inmates, and then to WCI, a facility far from his home area in which he faced security risks.

In his Opposition, Hoff also requests that C.O. Maddux be dismissed from the retaliation claim without prejudice "because at this time Plaintiff does not see him connected." Opp'n Mot. Summ. J. ("Opp'n") at 5, ECF No. 29. The Court will grant this request.

### I. Legal Standards

Defendants have filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on such materials, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Hoff has not filed a Rule 56(d) affidavit in this matter and has instead attached exhibits to his Opposition. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Retaliation

In his First Amendment retaliation claim, Hoff asserts that his transfer out of JCI was in retaliation for his filing of an ARP on August 26, 2016. He contends that the transfer to MCIJ was improper because although he uses a wheelchair, MCIJ lacks wheelchair-accessible cells. He further argues that the subsequent transfer to WCI was a form of retaliation because WCI is a maximum-security prison, it is more than two hours away from his home area, which is near JCI, and WCI presented safety risks because two individuals who had attacked him in the past were incarcerated at WCI.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation

7

for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the United States Court of Appeals for the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017).

Here, it is undisputed that Hoff's filing of an ARP on August 26, 2016 was protected First Amendment activity. Although Hoff was transferred on September 14, 2016, one day after he was interviewed by an investigator about the ARP, the transfer was scheduled no later than 7:45 a.m. on September 13, which was almost certainly before the ARP interview. While the transfer therefore was not in retaliation for his statements during the interview, it was still effected less than three weeks after Hoff filed the ARP on August 26. Where no explanation has been provided for the transfer, and the transfer to MCIJ was facially questionable because Hoff uses a wheelchair but MCIJ is a facility without wheelchair-accessible cells, Hoff has identified certain facts consistent with retaliation.

Nevertheless, the record does not provide sufficient facts to maintain Hoff's claim because there is no evidence that Warden Webb is liable for retaliation. First, in a § 1983 claim, a defendant cannot be found liable under a theory of vicarious liability or *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Thus, contrary to Hoff's claim, Warden Webb's status as the Warden of JCI and the overall supervisor of all JCI personnel does not by itself subject him to liability.

Neither the Complaint nor the exhibits filed in this case describe any personal action by the Warden in the transfer of Hoff. Thus, § 1983 liability would have to be based on a theory of supervisory liability, which requires evidence that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). Here, Hoff has failed to identify facts that would establish that the Webb had knowledge of retaliatory conduct by a subordinate.

Although Warden Webb was on the email distribution list that received notice on September 13, 2016 of Hoff's scheduled transfer the next day, he has denied that he was aware of either the ARP or the decision to transfer Hoff to MCIJ before it was made, and the only evidence of Warden Webb's review of the ARP is the documentation of his denial of it, which occurred on December 5, 2016, long after the transfer had occurred. Notably, the notice of an extension of the time period to respond to the ARP, submitted by Hoff with his Opposition, was signed by a correctional official other than Warden Webb. Likewise, the records showing that the ARP was

received on September 9, 2016 is signed by a different official, and the ARP investigation, which was completed on November 22, 2016, was conducted by a different official. Moreover, a denial of an ARP does not establish personal participation in a § 1983 violation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (holding that an allegation that a warden "rubber stamped" grievances was not enough to establish personal participation in a constitutional violation).

Finally, where Hoff's claim that the transfer was retaliatory rests on the alleged security risks and harsher conditions at WCI, the evidence does not support a finding of liability against Warden Webb. First, WCI and JCI both house maximum and medium security prisoners and can accommodate prisoners with disabilities, so there is no factual basis to conclude that the conditions were inherently harsher. Second, where the transfer out of JCI was to MCIJ, not to WCI, there is no evidence that Warden Webb was involved in the decision to transfer Hoff from MCIJ to WCI. Third, although Hoff is correct that he raised concerns about an inmate who had attacked him at WCI, he has specifically asserted that he conveyed that information to MCIJ officials, not JCI officials. Opp'n at 2 ("Plaintiff told multiple staff at MCI-J about enemies at WCI and about being stabbed at WCI in 2012."). His ARP identifying this risk was submitted on October 20, 2016, after he was already at WCI. Thus, there is no evidence that Warden Webb was ever aware that a transfer to WCI would pose a higher safety risk to Hoff. Under these circumstances, there are insufficient facts from which a reasonable jury could find that Warden Webb is liable for First Amendment retaliation. The Court also notes that, for substantially similar reasons, even if C.O. Maddux were not dismissed, there is insufficient evidence to support a finding of liability against him. Accordingly, the Court will grant the Warden's Motion.

## CONCLUSION

For the foregoing reasons, Warden Webb's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, will be GRANTED. The Complaint will be DISMISSED WITHOUT PREJUDICE as to C.O. Maddux. A separate Order shall issue.

Date:  March 4, 2020

THEODORE D. CHUANG
United States District Judge